CARPINTER & BAKER, INC., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7295. Promulgated November 18, 1927.

*Benjamin Mahler, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

## OPINION.

LOVE: The petitioner contends that since the payments in question were made on the basis of a binding contract entered into prior to the incidence of the income-tax laws, and since the person who negotiated the agreement in her behalf had procured and left with the petitioner clients who were sources of income to the petitioner in the years 1920 and 1921, the payments were proper deductions by petitioner from its gross income as ordinary and necessary expenses.

The facts are not clear as to what John T. Baker paid in to the petitioner at its formation; that is, the evidence does not show whether the bringing of certain clients to the petitioner which John T. Baker had previously procured and which became income-producing factors to the petitioner was the consideration for the issuance

of stock to John T. Baker. It appears John T. Baker was a member of a partnership prior to 1903; that in 1903 the petitioner was formed to succeed this partnership; that in 1907 a large number of clients, who were a source of income to the petitioner, were clients whom John T. Baker had personally secured, and that in the years involved these clients, or at least many of them, were productive of substantial commissions to the petitioner. The principal witness for the petitioner stated as a conclusion that these clients could have been taken away from the petitioner in 1907 by John T. Baker, which is inconsistent with the proposition that they were ever paid in to the petitioner. The same witness testified that the payments to Mrs. Baker were for services performed by John T. Baker. On cross-examination the following statements were made by the afore-mentioned witness:

Q. Now, what was said in the agreement with reference to designating that as a pension?

A. I do not know whether the word "pension" was used; it was done as a pension, however, that is what we considered it.

Q. The reason I asked you that question, Mr. Baker is the fact that in the return of your mother for these two years, signed by you, you designated the payment as a pension from the corporation.

A. Yes, that is the way we considered it.

Q. Now, when your agreement was made, did you discuss these payments as being a pension?

A. For services performed, yes, sir.

Q. But your mother never performed any services?

A. Oh, no, mother never performed any services.

The facts are not clear as to the exact nature of the agreement between Baker and petitioner, but whatever the facts may be with respect to these clients of John T. Baker, the evidence does not show that the agreement made in 1907 on behalf of Mrs. Baker gave to the petitioner any rights which it did not previously have, or furnish any new security for the retention of these accounts. The most that can be said is that in 1907 the petitioner, through its officers, who were members of the same family as John T. Baker, its president and principal stockholder, agreed to make certain payments to the widow of the principal stockholder, beginning after the death of John T. Baker and continuing throughout the life of Mrs. Baker, in consideration of the insurance business which Baker turned over to petitioner. It would seem that petitioner agreed to make the payments to Mrs. Baker in consideration of the insurance business which Baker had personally secured, the commissions from which, or at least a percentage thereof, belonged to him. We fail to see where it has been shown that the payments in question can be said

to come within the category of ordinary and necessary expenses. To say the least, they are extraordinary in their nature and would not seem likely to occur other than in a family concern, such as the petitioner or in the acquisition of an income-producing asset. It seems to us that the latter was the basis of the payments. There is not present the condition which exists in many corporations where pensions are paid to employees after they have reached a certain age and have performed certain services. Such consideration as ordinarily attaches to the payment of pensions to former employees for faithful services in the past could hardly attach to the payments here in question. Mrs. Baker rendered no services to the petitioner at any time and, therefore, what was paid to her could not be said to have been on this account; and, consequently, it could not be said that its payment would result in more satisfactory services on the part of present employees of petitioner.

The petitioner's answer to the foregoing is that the payments are not, in fact, in the nature of a pension, but rather represent payments made on account of clients which John T. Baker left with the petitioner. Even if we concede that such was the consideration for the payments, this would not make them allowable deductions as business expenses, as under such a theory they would be in the nature of capital expenditures which are being made for the acquisition of income-producing assets, and in our opinion under the facts these payments were made by petitioner in consideration of the insurance business turned over to it by Baker. The mere fact that payments are made under a contract does not make such payments allowable deductions from gross income as ordinary and necessary expenses. Cf. *Steinbach Co.*, 3 B. T. A. 348; *John C. Moore Corporation*, 3 B. T. A. 430. Whether a given expenditure is to be treated as capital or expense is a question of fact to be determined in each instance. *Gilliam Manufacturing Co.*, 1 B. T. A. 967. Where the expenditure is for the acquisition of an asset the useful life of which extends beyond the year for which the expenditure is being made, such expenditure is usually to be considered of a capital nature and, therefore, not deductible in its entirety in the year when made. Section 215, Revenue Act of 1918, and *Winifrede Coal Co.*, 1 B. T. A. 566.

The Board is of the opinion that whatever view is taken of the expenditures, the evidence fails to establish that they are ordinary and necessary expenses, and, consequently, the action of the Commissioner in disallowing them as a deduction is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*